**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Darlene Jackson,

            Plaintiff,

v.

Mesa Community College, et al.,

            Defendants.

No. CV-20-01869-PHX-DWL

**ORDER**

## INTRODUCTION

In June 2021, the Court dismissed *pro se* Plaintiff Darlene Jackson's Third Amended Complaint ("TAC") with leave to amend.  In the TAC, Plaintiff—a former nursing student at Mesa Community College ("MCC")—had asserted a single claim under 42 U.S.C. § 1983 against MCC and a trio of MCC administrators (together, "Defendants"), but the Court concluded that claim was subject to dismissal because the vague factual allegations in the TAC did "not indicate *what happened* to Plaintiff at all" and thus did not establish the violation of a constitutional right.  (Doc. 60 at 3-4.)

In response to the dismissal order, Plaintiff filed a Fourth Amended Complaint ("FAC").  (Doc. 61.)  The FAC asserts, for the first time, a series of state-law claims against Defendants, as well as a new federal claim for disability discrimination under the Rehabilitation Act.  (*Id.*)

Now pending before the Court is Defendants' motion to dismiss the FAC.  (Doc. 62.)  For the following reasons, the motion is granted and this action is terminated.

**RELEVANT BACKGROUND**

I.   <u>Procedural History</u>

On September 25, 2020, Plaintiff initiated this action.  (Doc. 1.)

In October and November 2020, Plaintiff filed (or attempted to file) a series of amended complaints, many of which were rejected due to non-compliance with the applicable rules.  (Docs. 5, 8, 9, 13, 20, 22.)

On November 24, 2020, Plaintiff filed the TAC.  (Doc. 22.)  As noted, it included a single claim against Defendants under 42 U.S.C. § 1983.  (*Id.* ¶¶ 3-4.)

On March 9, 2021, one of the Defendants filed a motion to dismiss the TAC for failure to state a claim.  (Doc. 34.)

On June 4, 2021, the Court issued an order dismissing the TAC as to all Defendants with leave to amend.  (Doc. 60.)  The order provided the following explanation for why dismissal was warranted:

> In the TAC, Plaintiff alleges that she was a student in the MCC nursing program from August 2016 until December 2018.  For reasons not explained in the TAC, Defendants conducted "two due process investigations" between November 2018 and February 2019. Plaintiff alleges these investigations were tainted by various improprieties: among other things, the "[i]nitial investigative tribunal was not impartial," the "allegations were inaccurately documented" or "not investigated," the "[f]inal investigative report" contains "erroneous information and subjective conclusions," and the investigation deviated from MCC's policies.  The TAC provides no information as to what happened to give rise to the investigations or what happened as a result of the investigations.  Plaintiff "seeks redress and relief for violations of [her] Fourteenth Amendment rights" and brings this action pursuant to "42 U.S.C. § 1983 Deprivation of Rights" . . . [but the] TAC identifies no such right. Indeed, the facts alleged do not indicate *what happened* to Plaintiff at all.

(*Id.* at 3-4, citations omitted.)  Finally, although the moving Defendant had asked for the dismissal to be without leave to amend, the Court concluded that Plaintiff should be granted leave to amend because it might be possible for her to allege new facts to cure the deficiencies identified in the dismissal order.  (*Id.* at 4.)

On June 30, 2021, Plaintiff filed the FAC.  (Doc. 61.)

- 2 -

On July 22, 2021, Defendants filed a motion to dismiss the FAC.  (Doc. 62.)

On August 5, 2021, Plaintiff filed a response.  (Doc. 64.)

On August 12, 2021, Defendants filed a reply.  (Doc. 65.)

II.   Factual Allegations In The FAC

In the FAC, Plaintiff provides a more fully developed factual basis for her claims. Plaintiff alleges that she began the MCC nursing program in August 2016.  (Doc. 61 ¶ 15.) Plaintiff was scheduled to graduate in May 2018 but narrowly failed the final exam.  (*Id.*) Plaintiff was readmitted to the program in August 2018.  (*Id.* ¶ 16.)

During the August 2018 semester, Plaintiff encountered a series of personal issues, including finding a lump in her breast, her sister having multiple heart attacks, and her fiancé's daughter being shot. (*Id.* ¶¶ 21-22.)  During this time, Plaintiff accidentally erased her clinical schedule from her phone, causing her to miss a clinical session scheduled for September 11, 2018.  (*Id.* ¶ 22.)  Due to the missed clinical, Plaintiff was placed on a performance contract.  (*Id.* ¶ 23.)

On September 27, 2018, Plaintiff met with a nursing instructor at or around 12:30 p.m. to sign the performance contract.  (*Id.* ¶¶ 24-25.)  After the meeting concluded, Plaintiff headed to her afternoon clinical.  (*Id.* ¶ 26.)  On the way, she met an instructor, Ms. Allen, who informed her that she had missed her morning clinical, was late for the afternoon clinical, and would not be allowed to participate because she was not dressed properly.  (*Id.* ¶¶ 26-27.)  Plaintiff told Ms. Allen that "a lot was going on" in her life but "God would help."  (*Id.* ¶ 27.)  That evening, Plaintiff emailed Ms. Allen to ask for help making up the missed clinical.  (*Id.* ¶ 28.)  In response, Ms. Allen asked that Plaintiff attend a meeting on October 4, 2018.  (*Id.* ¶ 29.)

During the ensuing meeting, which was attended by Plaintiff, two instructors (Ms. Allen and Ms. Boyce), and a nursing chair (Ms. Dietz), "Plaintiff was informed . . . that due to the last missed clinical Plaintiff would not be graduating."  (*Id.* ¶ 30.)  In response, Plaintiff "begged . . . to remain in the program," citing "her cancer diagnosis, her family emergencies . . . [and] the fact that Plaintiff had two children in school, and that Plaintiff

- 3 -

could not afford to pay for additional schooling and needed the increase[d] pay as a nurse to . . . cover new and current expenses." (*Id.* ¶ 31.) During this meeting, Plaintiff also revealed that she had previously been sent incorrect information about the clinical schedule. (*Id.* ¶ 32.) Near the end of the meeting, Ms. Dietz "informed Plaintiff if Plaintiff was approved for disability services and brought a doctor's note excusing Plaintiff for missed clinical on September 27, 2018, then nursing staff would allow Plaintiff to make up clinical hours." (*Id.* ¶ 36.)

Plaintiff subsequently obtained a doctor's note and provided it to the school and was approved for disability services. (*Id.* ¶ 37.) Nevertheless, Plaintiff was then told that "disability services would not cover her two missed clinicals and therefore Plaintiff would not be allowed to make up missed clinical hours and would not be graduating." (*Id.* ¶ 38.) In response, Plaintiff raised various grievances concerning the refusal to provide retroactive accommodations for her disability. (*Id.* ¶¶ 39-43, 45-55.)

Meanwhile, during the week of October 22, 2018, Plaintiff was attending a class in which Ms. Allen "noticed a student who was non black had not arrived to class." (*Id.* ¶ 44.) When another student reported that the "missing student[] was in route," Ms. Allen "reported class would not start until the student arrived." (*Id.*) Plaintiff later raised a complaint about this incident in the course of raising grievances regarding her disability accommodation. (*Id.* ¶ 51 ["Plaintiff discussed how Plaintiff witnessed a non black student being given courtesy regarding tardy."].)

On November 13, 2018, Plaintiff "went before a panel" to raise complaints regarding the nursing department's failure to adhere to the terms of Plaintiff's performance contract. (*Id.* ¶ 55.) The panel agreed to allow Plaintiff to remain in school and perform make-up work. (*Id.*) Plaintiff made up missed clinical hours that week. (*Id.* ¶ 56.) However, Plaintiff's performance contract was never updated to add that Plaintiff had completed the clinical hours or that she was entitled to disability services or accommodations. (*Id.* ¶ 57.)

On November 19, 2018, Plaintiff arrived five minutes late for her "last clinical at

Phoenix Children's Hospital" and also forgot her badge, which caused a delay when going through security.  (*Id.* ¶¶ 58-59.)  Later that day, an instructor, Ms. Otter, handed Plaintiff a piece of paper, designated another "performance contract," which stated that, because Plaintiff was 25 minutes late to the clinical, she would not be graduating.  (*Id.* ¶¶ 62-63.) In response, Plaintiff attempted to "explain[] her time of arrival and what transpired at the front desk" but her explanations were rejected.  (*Id.* ¶¶ 63-67.)  Afterward, Plaintiff emailed an MCC dean to report that she "believed she was being retaliated and discriminated against."  (*Id.* ¶ 68.)  Plaintiff also raised the complaint that the clinical instructor had dismissed the class 35 minutes early after penalizing Plaintiff for arriving 25 minutes late, which Plaintiff perceived as unfair.  (*Id.* ¶¶ 72-75.)

Following these incidents, Plaintiff raised additional complaints of discrimination and unfairness, including perceiving, as "the only African American in the clinical," a "pattern" of being "treated differently than other non black students."  (*Id.*¶¶ 76-85.) During this process, Plaintiff asked for a copy of her performance contract, but the copy she was given "had different wording and did not have Ms. Otter's signature."  (*Id.* ¶ 82.)

On November 30, 2018, the "First Discrimination Investigation" began when Plaintiff met with Defendants Cynthia Jepsen and Shanel Carter "to file a formal complaint against Mesa Community College Nursing Department on the grounds of retaliation, hostile environment, and bias treatment."  (*Id.* ¶ 88.)  During the meeting, Plaintiff discussed her belief that the nursing staff "began retaliating against her" after the November 13, 2018 panel decision in her favor, explained that the nursing staff did not accommodate her after she was approved for disability services, discussed witnessing "a non black student being given special treatment" when he was tardy, and described other treatment that caused Plaintiff humiliation or stress.  (*Id.* ¶¶ 89-96.)  When "asked what protected class Plaintiff felt was violated," "Plaintiff reported being an African American, [C]hristian and disabled."  (*Id.* ¶ 97.)

During the first week of December 2018, while the first investigation was still ongoing, Plaintiff successfully completed her last clinical and passed the final nursing

exam.  (*Id.* ¶ 100.)  However, when Plaintiff attempted to turn in some outstanding forms, she was told to "sign existing paperwork."  (*Id.* ¶¶ 101-103.)  Plaintiff refused to sign the paperwork and stated that the request amounted to improper retaliation and coercion during an open investigation.  (*Id.* ¶¶ 104-05.)

On December 10, 2018, the date of the graduation ceremony, a non-party MCC administrator (Dr. Rodney Holmes) called Plaintiff and informed her that she "would not be graduating because [she] was 15 minutes late to the clinical on November 19, 2018."  (*Id.* ¶ 107, 110.)  During this call, there was no mention of Plaintiff's pending allegations.  (*Id.*)

That same day, Plaintiff "phoned Maricopa County District Office" and left a voicemail with the "Director of EEO/AA."  (*Id.* ¶ 111.)  The following day, Plaintiff requested a copy of the investigative report concerning the investigation, was initially told she should have received a copy, and was later told the report was not complete.  (*Id.* ¶¶ 112-13.)

On December 20, 2018, the "Second Investigation—Administrative Review" began when Plaintiff submitted a request for reconsideration to Defendant Dr. Sonya Pearson.  (*Id.* ¶¶ 114.)  Dr. Pearson arranged a January 9, 2019 phone conference for herself, Plaintiff, Dr. Holmes, and an attorney, during which Plaintiff raised concerns about the request that she sign existing paperwork while the first investigation was open and responded to questioning as to why she "did not call while at [the] front desk of Phoenix Children's Hospital on November 19, 2018."  (*Id.* ¶¶ 117-20.)

On February 23, 2019, Plaintiff received, via certified mail, a copy of the final investigation report, which combined the first and second investigations into one "inclusive" report.  (*Id.* ¶¶ 124-26.)  It concluded there were "no policy violations."  (*Id.* ¶ 126.)  Plaintiff contends, however, that the participants in the investigatory process "did not adhere to the Maricopa County Community College District Policy" in various ways and that several of the conclusions in the report are unsupported and inaccurate.  (*Id.* ¶¶ 128-34.)  Plaintiff also contends that the overall quality of the MCC nursing program was

1 deficient, as evidenced by the fact that "at least ten students fail[ed] the final exam." (*Id.*

2 ¶ 135.)

3          Based on these factual allegations, Plaintiff asserts the following seven claims in the

4 FAC, which are asserted against all Defendants unless noted otherwise: (1) negligence; (2)

5 breach of contract (only MCC); (3) infliction of emotional distress; (4) tortious interference

6 with contracts; (5) misrepresentation (only MCC); (6) violation of Section 504 of the

7 Rehabilitation Act (only MCC); (7) violation of 42 U.S.C. § 1983 for racial discrimination

8 (only MCC). (*Id.* ¶¶ 138-70.)

9                                            **DISCUSSION**

10 I.     Legal Standard

11         "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

12 accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

13 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial

14 plausibility when the plaintiff pleads factual content that allows the court to draw the

15 reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

16 "Determining whether a complaint states a plausible claim for relief [is] . . . a context-

17 specific task that requires the reviewing court to draw on its judicial experience and

18 common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may

19 be consistent with a constitutional claim, a court must assess whether there are other "more

20 likely explanations" for a defendant's conduct. *Id.* at 681.

21         "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true

22 and are construed in the light most favorable to the non-moving party." *In re Fitness*

23 *Holdings Int'l, Inc.*, 714 F.3d 1141, 1144-45 (9th Cir. 2013). However, legal conclusions

24 couched as factual allegations are not entitled to the presumption of truth. *Iqbal*, 556 U.S.

25 at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere

26 conclusory statements, do not suffice."). "While legal conclusions can provide the

27 framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

28         The *Iqbal* pleading standard applies to *pro se* complaints, but they "must be held to

1    less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627

2    F.3d 338, 342 (9th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

3    Although entitled to "great leeway," a pro se litigant's pleadings "nonetheless must meet

4    some minimum threshold in providing a defendant with notice of what it is that it allegedly

5    did wrong." *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

6    II.    The Parties' Arguments

7            Defendants move to dismiss all of the claims in the FAC.  (Doc. 62.)  As for the

8    state-law claims in Counts 1-5, Defendants contend they are subject to dismissal because

9    (1) Plaintiff failed to comply with the Arizona notice of claim statute, A.R.S. § 12-

10   821.01(A); and (2) alternatively, they fall outside the applicable one-year statute of

11   limitations.  (*Id.* 2-4.)  As for the Rehabilitation Act claim in Count 6, Defendants contend

12   it is subject to a two-year statute of limitations, and is thus time-barred, because "it was

13   either November 19, 2018 [when Plaintiff was informed that she was not going to pass her

14   clinical rotation] or the denial of her Complaint on December 10, 2018 that Plaintiff knew

15   or should have known of injury which is the basis of her action" yet Plaintiff asserted the

16   Rehabilitation Act claim "for the first time on July 1, 2021, approximately 2 years and 7

17   (or 6) months after accrual."  (*Id.* at 4-7.)  Finally, as for the § 1983 claim in Count 7,

18   Defendants contend it fails to state a claim because (1) the allegation that "on <u>one</u> occasion

19   a non-African-American was allowed to be late to class and she was not" fails to establish

20   that Plaintiff was subjected to racial discrimination in violation of the Fourteenth

21   Amendment; and (2) at a minimum, because Count 7 is only asserted against MCC,

22   Plaintiff has not alleged the sort of policy-based or widespread conduct necessary to prevail

23   under a *Monell* theory.  (*Id.* at 7-10.)

24          Plaintiff opposes Defendants' motion.  (Doc. 64.)  As for the state-law claims in

25   Counts 1-5, Plaintiff argues that because they appeared, "however inartfully," in previous

26   versions of her complaint, Defendants have forfeited the ability to raise any defense based

27   on the notice-of-claim statute or the statute of limitations.  (*Id.* at 2-3, 5-7.)  Alternatively,

28   Plaintiff contends the notice-of-claim requirement "applies only to governmental entities,

not individuals," so "even if state law claims against MCC are dismissed, they still stand against the individual defendants." (*Id.* at 2.)  Plaintiff also argues that, because "Contract Clause violations are actionable under § 1983," "no Notice of Claim is required and . . . state law for statute of limitations appl[ies] to Contract Clauses." (*Id.* at 3.)  As for the Rehabilitation Act claim in Count 6, Plaintiff argues that it falls within the statute of limitations because, under Rule 15(c)'s "relation back of amendments" rule, it should be considered filed as of the filing date of her original complaint in September 2020. (*Id.* at 3, 7-9.)  Finally, as for the § 1983 claim in Count 7, Plaintiff does not address Defendants' arguments regarding why the claim fails as to MCC. (*Id.* at 3, 9-11.)[1]

In reply, Defendants argue that Plaintiff's arguments regarding the state-law claims in Counts 1-5 lack merit because Arizona's notice-of-claim statute expressly applies to public employees, the Contracts Clause of the United States Constitution is inapplicable in this circumstance, and they did not waive their statute of limitations defense. (Doc. 65 at 3-6 & n.1.)  As for the Rehabilitation Act claim in Count 6, Defendants contend that Plaintiff may not rely on Rule 15(c)'s relation-back doctrine because the previous iteration of the complaint (the TAC) "does not state one word relative to handicap or handicap discrimination" and earlier versions of the complaint, although occasionally using the phrases "disability" and "disability discrimination," did not allege any facts that would support a Rehabilitation Act claim. (*Id.* at 6-9.)  Finally, as for the § 1983 claim in Count 7, Defendants reiterate their position that the allegations concerning the single instance in which a non-African-American student was allowed to be tardy fail to state a plausible claim. (*Id.* at 9-10.)

---

[1]     Plaintiff notes that the FAC provides "specific dates of interaction and allegations" (*id.* at 9), which previous iterations of the complaint lacked, but Plaintiff does not appear to apprehend Defendants' arguments that (1) she limited her § 1983 claim to MCC only, which is a municipal corporation, and (2) to state a § 1983 claim against a municipal corporation, she must specifically allege facts demonstrating that her constitutional rights were violated as a result of an official policy, practice, or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–92 (1978); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (failure to train must be deliberate choice for § 1983 liability); *Reuter v. Skipper*, 4 F.3d 716, 719-20 (9th Cir. 1993) (counties are municipal corporations); *Wilson v. Maricopa Cmty. Coll. Dist.*, 699 F. App'x 771, 772 (9th Cir. 2017) (*Monell* applies to community college district).

III.   <u>Analysis</u>

As explained below, Defendants' motion to dismiss is granted in full.

A.   **State-Law Claims**

The state-law claims in Counts 1-5 are subject to dismissal pursuant to Arizona's notice-of-claim statute, which provides that persons who have claims against "a public entity, public school or public employee" must file a notice of claim "within one hundred eighty days after the cause of action accrues." A.R.S. § 12-821.01(A).  Here, Plaintiff concedes that her "injury accrued February 2019, when [she] received the Final Investigation from [MCC]" (Doc. 64 at 7), and it is undisputed that Plaintiff did not file a notice of claim within 180 days of this date—the individual Defendants have submitted evidence to this effect (Doc. 63) and Plaintiff makes no argument to the contrary. Plaintiff's contention that the statute only applies to claims against governmental entities is belied by the plain statutory text, which provides that the requirement applies to claims against a "public employee."   Nor is there any merit to Plaintiff's contentions that Defendants forfeited their notice-of-claim defense or that the Contracts Clause of the United States Constitution is somehow implicated here.  No state-law claim was pleaded before the filing of the FAC and Plaintiff has never alleged that any state law is impairing any contract.

B.   **Rehabilitation Act Claim**

The Rehabilitation Act claim in Count 6 is subject to dismissal because it is time-barred.  Plaintiff does not dispute that such a claim is subject to a two-year statute of limitations, Plaintiff acknowledges that her claim accrued no later than February 2019, and it is undisputed that Plaintiff did not assert a Rehabilitation Act claim in any of the previous iterations of her complaint.  Instead, Plaintiff asserted this claim for the first time in the FAC, which was filed in July 2021 (more than two years after the February 2019 accrual date).  Thus, absent application of the relation-back doctrine, the claim is untimely.

Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the

amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Significantly, it is not enough that the new claim arose out of "the same general transaction" as the original claims. *Echlin v. PeaceHealth*, 887 F.3d 967, 978 (9th Cir. 2018). Instead, "[t]he claims must share a common core of operative facts such that the plaintiff will rely on the same evidence to prove each claim. Thus, an amendment will not relate back where the amended complaint had to include additional facts to support the new claim." *Id.* (cleaned up). *See generally* 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 15, at 460 (2021) ("Nor is relation back authorized when the new claims are based on factual allegations that were not part of the narrative in the earlier pleading and that significantly change—rather than just augment or amplify—the 'core of operative facts' in the case.").

Plaintiff cannot rely on the relation-back theory here because none of the previous iterations of her complaint alleged any facts that might support a Rehabilitation Act claim. "To establish a claim under the . . . Rehabilitation Act, [a plaintiff] must show: (1) [she] is a qualified individual with a disability; (2) [she] was denied a reasonable accommodation that [she] needs in order to enjoy meaningful access to the benefits of public services; and (3) the program providing the benefit receives federal financial assistance." *Csutoras v. Paradise High School*, 12 F.4th 960, 968 (9th Cir. 2021) (cleaned up). Here, although the original version of the complaint happened to note that Plaintiff "listed allegations of discrimination based on race, disability and religion" in a December 2018 letter to Defendant Jepsen (Doc. 1 at 4), it did not allege any facts establishing that Plaintiff was, in fact, a qualified individual with a disability or that she had been denied a reasonable accommodation that she needed to enjoy meaningful access to the MCC nursing program. Instead, it simply raised a series of criticisms concerning how Defendants conducted the investigations into Plaintiff's various complaints and then argued that Defendants' conduct violated 42 U.S.C. § 1983. (*Id.* at 1-5.)

Subsequent iterations of the complaint, including ones that were stricken for non-compliance with the applicable rules, followed the same pattern. For example, in the

(stricken) document filed on October 26, 2020, Plaintiff summarized her case as follows: "This is an action for personal damages suffered by Plaintiff, as a direct result of [MCC], [Title] IX Investigators repeated unfair due process practices that unjustly deprived the Plaintiff of her Fourteenth Amendment Rights.  Arbitrary and unfair due process practices during two investigations resulted in deprivation of the Plaintiff's liberty, property and violation of equal protection under the law and right to a fair due process."  (Doc. 5 at 1.)  There was no mention of a disability, or a failure to accommodate that disability, in the paragraphs that followed.  (*Id.* at 2-3.)

In the second amended complaint, docketed on November 9, 2020, Plaintiff again characterized her lawsuit as seeking "personal damages suffered . . . as a direct result of [MCC], [Title] IX Investigators unfair due process procedures that unjustly deprived the Plaintiff of her constitutional rights."  (Doc. 20 at 2 ¶ 1.)  Although this version of the complaint added an allegation of "[i]ncorrect policy used by Defendant Cynthia Jepsen to investigate Plaintiff's allegation of disability discrimination" (*id.* at 4 ¶ 14), it clarified that the allegation was simply that Jepsen had followed the wrong procedures when conducting the investigation, by "us[ing] policy for sexual abuse allegation" (*id.* at 5 ¶ 23).  Critically, and as with the previous version of the complaint, this version did not actually allege that Plaintiff was disabled, let alone include any factual allegations as to the nature of that disability.  Nor did it include any factual allegations concerning Defendants' alleged failure to accommodate the unspecified disability.

Finally, as Defendants correctly note in their motion (and as Plaintiff does not dispute in her response), the TAC filed on November 24, 2020 (Doc. 22) was even further afield.  For example, the word "disability" was removed from the paragraph describing Defendant Jepsen's alleged failure to follow the correct investigatory policy.  (*Id.* at 4 ¶ 15, 6 ¶ 24.)

For these reasons, Plaintiff cannot rely Rule 15(c)(1)(B)'s relation-back doctrine for purposes of her Rehabilitation Act claim.  The claim was first asserted in July 2021, more than two years after it accrued.  It is therefore time-barred.

C.     **§ 1983 Claim**

The § 1983 claim in Count 7 is subject to dismissal because it fails to state a claim on which relief may be granted.  The sole constitutional violation alleged in the FAC is a violation of Plaintiff's Fourteenth Amendment right to be free from "racial discrimination." (Doc. 61 ¶ 170.)  However, the only factual allegations in the FAC bearing on that topic are that, on one occasion, a non-party MCC instructor (Ms. Allen) delayed the start of class by approximately 10 minutes to accommodate the tardiness of a non-African-American student.  (*Id.* ¶ 44.)  Presumably, Plaintiff's intention in mentioning this episode is to contrast it with the instance in which Ms. Allen refused to allow Plaintiff to attend a clinical for which Plaintiff was both late and improperly dressed, as well as the instance in which a different non-party MCC instructor (Ms. Otter) handed Plaintiff paperwork releasing her from the program after arriving late for a clinical rotation at Phoenix Children's Hospital. (*Id.* ¶¶ 26-27, 58-67.)  Putting aside the fact that the FAC fails to allege whether the student involved in the other incident ultimately suffered any consequences for the tardiness, these allegations fail to establish a § 1983 claim against MCC because there are no allegations that the MCC officials at issue were acting pursuant to an official policy, practice, or custom or were officials with final policy-making authority.  *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012).

D.     **Leave To Amend**

It does not appear that Plaintiff requests leave to amend in the event of dismissal— instead, she simply contends that the motion to dismiss should be denied.  (Doc. 64 at 11.) At any rate, even if Plaintiff had requested leave to amend, such a request would be denied.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the Court "should freely give leave [to amend] when justice so requires."  The Ninth Circuit has emphasized that "[t]his policy is 'to be applied with extreme liberality.'"  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted).  Thus, leave to amend should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."

*AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  "An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'"  *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (citation omitted).

Here, granting Plaintiff leave to file yet another amended complaint would be futile. She has been given many opportunities to craft a viable complaint and appears unable to do so.  *Cf. Chodos v. W. Publishing Co.*, 292 F.3d 992, 1002 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'") (citation omitted).

Accordingly,

**IT IS ORDERED** that:

(1)     Defendants' motion to dismiss (Doc. 62) is **granted**.

(2)     The Clerk shall enter judgment accordingly and terminate this action.

Dated this 29th day of October, 2021.

Dominic W. Lanza
United States District Judge